Robert L. Hinkle, United States District Judge
The defendant Demetris S. Blocker has moved for a sentence reduction under the First Step Act. The Act makes retroactive changes in the penalty range-the minimum and maximum sentences-for a subset of crack-cocaine offenses. This order concludes that Mr. Blocker's eligibility for a sentence reduction turns on facts not established by this record and that he is entitled to an evidentiary hearing.
I
The statutory penalty range for a crack-cocaine trafficking offense can increase based on the quantity of the drug involved in the offense and based on the defendant's prior convictions.
The Fair Sentencing Act took effect in 2010. It changed the quantity of crack that triggers an increase in the penalty range. The increase previously triggered by 5 grams or more now was triggered by 28 grams or more. See Fair Sentencing Act, Pub. L. No. 111-220, § 2(a)(2), 124 Stat. 2372 (2010). The increase previously triggered by 50 grams or more now was triggered by 280 grams or more. Id. § 2(a)(1). But these changes were not retroactive-an individual who already had been sentenced could not obtain a sentence reduction on this basis.
The First Step Act, which took effect on December 21, 2018, makes these changes partially retroactive, allowing (but not requiring) a court to reduce the sentence of a person whose penalty range would have been different based on the Fair Sentencing Act's changes in the quantity of crack that triggers an increase. See First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222.
The First Step Act also changes the definition of prior convictions that can subject a defendant to an increase in the penalty range and changes the low end of a range that is increased based on one or more prior convictions. But these changes, standing alone, do not allow a court to reduce a sentence already imposed.
The change in the definition of prior convictions has two parts. First, under the prior law, any "felony drug" conviction-including one for mere possession-could support an increase, regardless of the sentence actually imposed or how old the conviction was. See 21 U.S.C. § 841(b)(1)(A) & (B). But under the First Step Act, only a *1127 drug-trafficking conviction can trigger an increase, and even then, only if the statutory maximum sentence was ten years or more, the defendant actually served more than one year, and the defendant was released not more than 15 years before the new offense began. See First Step Act § 401(a)(1). Second, the First Step Act adds a new category of prior offenses that can trigger an increase: a "serious violent felony" meeting specified conditions, including that the defendant actually served more than one year in prison. Id.
II
Mr. Blocker pleaded guilty in 2007 to three counts: conspiracy to manufacture, distribute, or possess with intent to distribute 500 grams or more of powder cocaine and 50 grams or more of crack (count one); distributing 5 grams or more of crack on February 14, 2007 (count three); and possessing with intent to distribute 5 grams or more of crack on March 15, 2007 (count four). At his plea proceeding, after being sworn, Mr. Blocker admitted his guilt and said the government's written statement of facts was "all true." Plea Hr'g Tr., ECF No. 68, at 9. Count two was dismissed on the government's motion.
The statement of facts established the following. Mr. Blocker sold a confidential informant 32.1 grams of crack on February 14, 2007. This transaction produced the conviction on count three. A search on March 15, 2007 led to seizure of 37.9 grams of crack from Mr. Blocker's car and 1.5 grams from his pocket-a total of 39.4 grams. This led to the conviction on count four. Mr. Blocker told officers after his March 15 arrest, and after Miranda warnings, that he had purchased two to three ounces of cocaine weekly since the prior September. Mr. Blocker said his source brought the cocaine to the home of one of Blocker's relatives and cooked it-plainly meaning he converted it to crack. This was all part of the conspiracy charged in count one.
The presentence report concluded, based on Mr. Blocker's statements, that the conspiracy involved, and Mr. Blocker was responsible for, 907 grams of crack-calculated as two ounces (56.7 grams) for 20 weeks (less than five months) at a powder-to-crack conversion rate of 80% (a conservative estimate). Mr. Blocker objected, asserting that 907 grams was too high. But Mr. Blocker never backtracked from his admission at the plea proceeding that he was responsible for 500 grams or more of powder. He asserted that not all of the powder was converted to crack, but he admitted some was. He did not take issue with the 80% conversion ratio. And he did not backtrack from his admission that he was responsible for 50 grams or more of crack.
III
Under the law in effect in 2007, the minimum sentence on the conspiracy charge-count one-was 20 years in prison, because the offense involved 50 grams or more of crack and Mr. Blocker had a prior drug felony conviction. On counts three and four, the minimum sentence was 10 years, because each offense involved more than 5 but fewer than 50 grams of crack. The maximum sentence on each of the three counts was life.
Mr. Blocker received and is serving the minimum 20-year sentence on count one and concurrent 20-year terms on counts three and four. This was a downward variance from the then-applicable career-offender guideline range. If sentenced anew today, however, Mr. Blocker would not be a career offender. Under current law, the guideline range would be substantially lower. If Mr. Blocker is eligible for a sentence *1128 reduction, it is at least possible that the sentence will be reduced.
IV
Under the Fair Sentencing Act, the penalty range on counts three and four would have been the same as it was under prior law, because each offense involved more than 28 grams of crack, enough to trigger the 10-to-life penalty range. But the penalty range on count one would have been the same only if the conspiracy involved, and Mr. Blocker was responsible for, at least 280 grams of crack-the amount required to trigger the 20-to-life penalty range under the Fair Sentencing Act.
In response to Mr. Blocker's current motion to reduce his sentence under the First Step Act, the government says it could have proved at a trial or at sentencing, if called on to do so, that Mr. Blocker was responsible for at least 400 grams of crack-more than the 280 grams required to make him ineligible for a sentence reduction. The government says it could prove the same thing now if called on to do so. And the assertion may be correct. But the government's proffer does not quite seal the deal.
Mr. Blocker has admitted that he was responsible for at least 500 grams of powder and at least 50 grams of crack. He so admitted not only by pleading guilty but also in the statement of facts and in the sentencing process-including by not objecting to parts of the presentence report. But Mr. Blocker did not explicitly admit that all the powder was converted to crack.
Mr. Blocker's post-Miranda statements, if credited and taken at face value, provide support for, but do not necessarily establish, that he was responsible for at least 280 grams of crack. This is so because the statements, at least as recounted in this record, do not explicitly assert that all the powder was converted to crack. In his objections to the presentence report, Mr. Blocker explicitly asserted that some of the powder was not converted to crack. And there was no finding-because there did not need to be a finding-that all the powder was converted to crack or that Mr. Blocker was responsible for at least 280 grams of crack.
In sum, whether the Fair Sentencing Act changed the penalty range on count one turns on a question of historical fact: did the conspiracy involve at least 280 grams of crack for which Mr. Blocker was responsible? This record does not sufficiently answer the question. This order directs the clerk to set a status conference by telephone at which the scheduling of an evidentiary hearing may be addressed.
V
It bears noting that the First Step Act's nonretroactive changes in the definition of prior offenses that trigger an increase in the penalty range would not affect Mr. Blocker, even if the changes were retroactive. Mr. Blocker had a prior conviction for a drug trafficking offense with a maximum sentence of 10 years or more, he served more than one year on that offense, and the conviction occurred within 15 years of the current offense.
VI
Section IV of this order focuses on the amount of crack involved in Mr. Blocker's offenses. This approach could be labeled the "offense-controls" theory. Mr. Blocker asserts that this approach is incorrect. He asserts that when a defendant seeks a sentence reduction under the First Step Act, the relevant question is not the amount of crack actually involved in the offense of conviction but only the amount that was charged in the indictment that led *1129 to the conviction. This could be labeled the "indictment-controls" theory. A smattering of district court decisions supports this approach. See United States v. Dodd , No. 3:03-cr-00018, 372 F.Supp.3d 795, 2019 WL 1529516 (S.D. Iowa Apr. 9, 2019) ; United States v. Davis , No. 07-cr-245S, 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019) ; United States v. Davis , No. 4:92-cr-04013-WC-CAS-3 (N.D. Fla. Mar. 3, 2019). Both Davis cases are on appeal.
The indictment-controls theory misreads the statute and is demonstrably inconsistent with Congress's intent. At least four points support this conclusion.
A
The First Step Act allows a sentence reduction only for a "covered offense." See First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. The statute defines "covered offense" to include only "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." Id. § 404(a). Sections 2 and 3 of the Fair Sentencing Act revised the quantity of crack that triggers an increase in the penalty range-changing 5 grams to 28 and changing 50 grams to 280.
The word "which" in this definition of "covered offense" modifies "violation of a Federal criminal statute." The "violation" of the criminal statute is the criminal conduct; the violation is not the indictment. The penalty range for a "violation" involving 400 grams of crack-the minimum amount the government says was involved in Mr. Blocker's count one-was 20 years to life, both before and after adoption of the Fair Sentencing Act; the Act did not change this penalty range. Similarly, the penalty range for a "violation" involving 32.1 or 39.4 grams of crack-the amounts involved in Mr. Blocker's counts three and four-was 10 years to life; again, the Act did not change this penalty range.
To be sure, the penalty ranges corresponding to the indictment changed, even on the government's view of the facts. But the statute does not define a "covered offense" as one resulting in an indictment corresponding with a change in the penalty range. The statute defines a "covered offense" as a "violation"-a crime-for which the penalty range changed. On the government's view of the facts, the penalty range for Mr. Blocker's crimes did not change.
In short, the statute defines "covered offense" by reference to the "violation," not by reference to the "indictment." The statute thus adopts the offense-controls theory, not the indictment-controls theory. On the government's view of the facts, Mr. Blocker's crimes are not "covered offenses." If those are the actual facts, the First Step Act does not authorize a sentence reduction.
B
For a covered offense, the First Step Act allows a court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed. " First Step Act of 2018 § 401(b) (emphasis added). The reference point is "the time the covered offense was committed," not the time when the indictment was returned or the conviction was obtained.
The proper application of this language is well illustrated by Mr. Blocker's case. The question is what sentence would have been imposed had the Fair Sentencing Act been in effect when Mr. Blocker committed his offenses. The answer does not turn on what the actual indictment charged, but on what it would have charged, and what result it would have produced, had the *1130 Fair Sentencing Act been in effect at that time.
The indictment of course would have tracked the relevant statute-that is, the Fair Sentencing Act-just as indictments routinely do, and just as the actual indictment in this case tracked the statute that was actually in effect at the time of the offenses. Under Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), a defendant had and still has a right to a jury trial on any fact (other than a prior conviction) that would increase the maximum sentence that could be imposed for an offense. Since that decision, indictments in drug cases in this district, and in most if not all others, have charged a drug type and amount sufficient to place the offense in the proper sentencing range-no more and no less. See United States v. Haynes , No. 8:08-cr-441, 2019 WL 1430125, *2 (D. Neb. Mar. 29, 2019).
So had the Fair Sentencing Act been in effect when Mr. Blocker committed his offenses, count one would have charged that the conspiracy involved 280 grams or more of crack, not just 50. Count three would have charged distribution of 28 grams or more of crack, not just 5. Count four would have charged possessing with intent to distribute 28 grams or more, not just 5. The only reason the actual indictment used the lower amounts was that those were the amounts included in the statute at that time-the indictment tracked the statute.
Had the indictment charged the higher amount of crack-280 grams-on count one, it might or might not have affected Mr. Blocker's decision to plead guilty. The government would have relied on the same drug-amount evidence it relied on at that time and that it now relies on in response to the motion to reduce the sentence. Mr. Blocker might or might not have admitted that the conspiracy involved at least 280 grams of crack. Had he denied it, the government might or might not have been able to prove it beyond a reasonable doubt.
It may not be possible now, after the fact, to resolve with certainty the question about what would have happened. But courts routinely resolve issues on which certainty is elusive, including issues like this one. Thus, for example, courts routinely must decide what would have happened when addressing ineffective-assistance-of-counsel claims on motions under 28 U.S.C. § 2255 or on petitions for writs of habeas corpus under 28 U.S.C. § 2254.
In sum, the authority to reduce a sentence "as if" the Fair Sentencing Act was in effect requires a court to apply the offense-controls theory, not the indictment-controls theory.
C
When the First Step Act was under consideration, the United States Sentencing Commission estimated that the Act would make 2,660 prisoners eligible for a sentence reduction. See U.S. Sentencing Comm'n, Sentence and Prison Impact Estimate S. 756, The First Step Act of 2018 (Dec. 18, 2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/prison-and-sentencing-impact-assessments/December_2018_Impact_Analysis.pdf; see also U.S. Sentencing Comm'n, Sentence and Prison Impact Estimate Summary S. 1917, The Sentencing Reform and Corrections Act of 2017 (Aug. 3, 2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/prison-and-sentencing-impact-assessments/August_2018_Impact_Analysis_for_CBO.pdf (providing the same estimate under a different bill with identical language).
The estimate was based on the offense-controls theory, not the indictment-controls theory. Under the offense-controls *1131 theory, a defendant is eligible for a sentence reduction only if an offense of conviction involved crack in the amount of at least 5 but fewer than 28 grams or at least 50 but fewer than 280 grams. A defendant is not eligible for a reduction based only on an offense involving fewer than 5 grams, or at least 28 but fewer than 50 grams, or 280 grams or more. The number of defendants eligible under the offense-controls theory is only a fraction of the number of defendants convicted of crack offenses before adoption of the Fair Sentencing Act.
Under the indictment-controls theory, in contrast, every crack defendant sentenced before the Fair Sentencing Act took effect would be eligible for a reduction, at least in districts like this one in which indictments routinely track the statute. That means most if not all districts. The number of eligible defendants would dwarf the estimate that the Sentencing Commission provided and that Congress undoubtedly took into account when considering the statute. Had that been Congress's intent, surely there would be some reference to this in the legislative history. There is none.
D
The indictment-controls theory would produce anomalous results that Congress could not have intended. The First Step Act was intended to make the Fair Sentencing Act's drug-quantity changes available to defendants who were sentenced before that Act took effect-to eliminate the disparity between earlier and later crack defendants. The indictment-controls theory would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack defendants a lower penalty range not available to later crack defendants.
On the assumption that, as the government asserts, it could have proved Mr. Blocker was responsible on count one for at least 400 grams of crack, his case provides an illustration. If he committed the same offense today, the minimum sentence would be 20 years. But under the indictment-controls theory, he would be eligible for a reduction to 10 years. Nothing in the First Step Act's language, its legislative history, or sound logic or policy supports this more-favorable treatment of prior offenses compared to current offenses.
Similarly, the Fair Sentencing Act was intended to lower the sentencing disparity between crack and powder, changing the 100-to-1 drug-amount ratio to approximately 18-to-1. The First Step Act was intended to give that same benefit to earlier crack defendants. The offense-controls theory accomplishes that result. But if sentences for crack offenses are now lowered based on the indictment-controls theory, an enormous disparity will be created in the opposite direction. Many defendants who committed crack offenses prior to adoption of the Fair Sentencing Act will be subject to lower penalty ranges than defendants who committed offenses involving the same amount of powder.
Consider, for example, two defendants, one who conspired in 2007 to distribute 5 kilograms of powder, and the other who conspired to distribute 5 kilograms of crack, both with two prior felony drug convictions. In 2007, before adoption of the Fair Sentencing Act, both would have been subject to mandatory life sentences-the powder defendant because the offense involved 5 kilograms or more, and the crack defendant because the offense involved 50 grams or more. The indictments would have tracked the statute, so the powder defendant's indictment would have charged 5 kilograms or more of powder, and the crack defendant's indictment would have charged 50 grams or more of crack. If both were convicted, both would have faced mandatory life sentences.
*1132 Under the offense-controls theory, nothing would change. Both defendants would still be subject to mandatory life sentences, just as two defendants who committed the same offenses today would be subject to mandatory life sentences. There is no reason to believe Congress intended any different result.
But under the indictment-controls theory, the crack defendant would now face a minimum of only 10 years, not life, because he would be treated as having committed an offense involving only 50 grams of crack-not 280 or more as required to trigger the life sentence. This would be the result even though the offense actually involved 5 kilograms of crack and the government could prove it. The powder defendant, in contrast, would continue to serve the mandatory life sentence, because nothing in the Fair Sentencing Act or First Step Act allows a sentence reduction for a defendant whose offense involved only powder.
Congress could not have intended to treat crack defendants this much more favorably than powder defendants. The offense-controls theory, not the indictment-controls theory, is the proper reading of the statute.
VII
Whether the Fair Sentencing Act changed the penalty range for Mr. Blocker's offenses turns on a question of fact not resolved by this record. Unless Mr. Blocker chooses to forgo an evidentiary hearing and instead appeal the rejection of the indictment-controls theory, an evidentiary hearing will be required. This order directs the clerk to set a status conference so that further procedures may be scheduled.
IT IS ORDERED:
1. The clerk must set a status conference by telephone on Mr. Blocker's motion to reduce his sentence, ECF No. 63.
2. The clerk must provide copies of this order to the attorneys of record and the Federal Public Defender through the electronic filing system.
SO ORDERED on April 25, 2019.