**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2499
_____

UNITED STATES OF AMERICA

v.

ANTHONY JACKSON,
                              Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-03-cr-00642-001
District Judge: The Honorable Michael M. Baylson
_____

No. 19-2517
_____

UNITED STATES OF AMERICA

v.

KEVIN HARRIS,
                              Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-06-cr-00182-001
District Judge: The Honorable Nora B. Fischer

Argued March 4, 2020

Before: SMITH, *Chief Judge*, HARDIMAN, and KRAUSE,
*Circuit Judges*

(Filed: July 1, 2020)

Michelle Rotella
Robert A. Zauzmer                    **[ARGUED]**
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA  19106
        *Counsel for Appellee United States of America*

Christy Martin                       **[ARGUED]**
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center
Suite 540 West
Philadelphia, PA  19106
        *Counsel for Appellant Jackson*

Laura S. Irwin

Ira M. Karoll                                    **[ARGUED]**
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA  15219
        *Counsel for Appellee United States of America*

Samantha Stern                                   **[ARGUED]**
Federal Public Defender Office
for the Western District of Pennsylvania
1001 Liberty Avenue
Suite 1500
Pittsburgh, PA  15222
        *Counsel for Appellant Harris*

_____

OPINION OF THE COURT
_____

SMITH, *Chief Judge.*

Kevin Harris and Anthony Jackson seek discretionary reductions of their sentences pursuant to § 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222.  The District Courts denied relief, and on appeal, the primary issue is § 404 eligibility.  Due to several errors that we describe below, we will vacate and remand in *United States v. Harris* and reverse and remand in *United States v. Jackson*.

**I**

3

In 2006, Kevin Harris pleaded guilty to possession with the intent to distribute five grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). As part of his plea agreement, Harris stipulated to the quantity he possessed—33.6 grams. Harris later moved in 2019 for a reduction of his 210-month sentence pursuant to § 404. *See* 132 Stat. at 5222. The U.S. District Court for the Western District of Pennsylvania assumed that Harris was eligible under § 404 but denied relief, stating that "neither the statutory penalties nor the advisory guidelines range would be affected if [he] were sentenced today given the stipulated drug quantity." Harris App. 1–2.[1] Harris timely appealed, claiming that this inaccurate statement tainted the Court's decision.

Anthony Jackson was convicted in 2004 of violating the same statute, § 841(a)(1), (b)(1)(B)(iii). His indictment charged him with possession with the intent to distribute crack "in excess of five (5) grams, that is approximately forty-eight (48) grams." Jackson App. 46–47. The jury convicted Jackson of possessing five grams or more, without any specific finding that he possessed forty-eight grams. In 2019, Jackson moved under § 404 for a reduction of his 300-month sentence. *See* 132 Stat. at 5222. The U.S. District Court for the Eastern District of Pennsylvania denied relief, determining that he was ineligible. Jackson filed a timely appeal.

**II**

---

[1] Because we are reviewing two separate cases, the relevant petitioner's name precedes each brief or record citation.

4

Several years after Harris and Jackson were convicted and sentenced, Congress enacted the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372.[2] Section two amended their statute of conviction, § 841(b)(1)(B)(iii), by increasing the quantity threshold from five to twenty-eight grams of crack.[3] *See* 124 Stat. at 2372. The Fair Sentencing Act, however, was not retroactive, *see Dorsey*, 567 U.S. at 264, so neither Harris nor Jackson was able to benefit from its passage.

Enactment of the First Step Act in 2018 held the potential to remedy Harris's and Jackson's ineligibility. It provides that "[a] court that imposed a sentence for a covered offense may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was

---

[2] The Fair Sentencing Act was designed to "restore fairness to Federal cocaine sentencing." *See* 124 Stat. at 2372. It aimed to achieve this goal by reducing the sentencing disparities between possessors of crack, who are predominately black or Latino, and possessors of powder cocaine, who are more often white. *See Dorsey v. United States*, 567 U.S. 260, 268–69 (2012); *United States v. Dixon*, 648 F.3d 195, 197 (3d Cir. 2011); Erik Eckholm, *Congress Moves to Narrow Cocaine Sentencing Disparities*, N.Y. TIMES, July 29, 2010, at A16.

[3] Section two amended § 841(b)(1)(B)(iii) so that the penalties previously triggered by possession of five grams or more of crack now require possession of twenty-eight grams or more. *See* 124 Stat. at 2372. Similarly, section two increased the quantity threshold in § 841(b)(1)(A)(iii) from fifty to 280 grams of crack. *See id.*

5

committed." § 404(b), 132 Stat. at 5222. Section 404 permits the retroactive application of the penalty modification enacted in the Fair Sentencing Act, but its effect applies only to "covered offenses." *Id.* So our initial inquiry concerns eligibility—whether a defendant has committed a "covered offense." *Id.* Yet even if a defendant is eligible for relief because he committed a "covered offense," that in itself "does not mean he is entitled to it." *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019). A district court may reduce a sentence but is not required to do so. *See* § 404, 132 Stat. at 5222 (statutory text makes § 404 discretionary); *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019) (same).

### III

The District Courts had jurisdiction pursuant to 18 U.S.C. § 3231. This Court exercises jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

As to the proper interpretation of a statute, our review is plenary. *See United States v. Hodge*, 948 F.3d 160, 162 (3d Cir. 2020). If a defendant is eligible for a reduced sentence under § 404, a district court's denial of relief is reviewed for an abuse of discretion. A district court abuses its discretion by making an error of law or by relying on a clearly erroneous factual conclusion. *See United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008).

### IV

We begin, as we must, with the plain text of § 404. *See Hodge*, 948 F.3d at 162; *United States v. Introcaso*, 506 F.3d

6

260, 264 (3d Cir. 2007). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). If the statutory language is clear, then the text of the statute is the end of the matter. *See United States v. Jones*, 471 F.3d 478, 480 (3d Cir. 2006). But when a statute includes language reasonably susceptible to different interpretations, a court may attempt to discern Congress's intent by employing canons of statutory construction. *See Introcaso*, 506 F.3d at 264–65; *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005).

Section 404 reads,

(a) DEFINITION OF COVERED OFFENSE.— In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

132 Stat. at 5222. As relevant to this dispute, a "covered offense" is "a violation of a Federal criminal statute, *the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010* . . . that was committed before August 3, 2010." *Id.* (emphasis added).[4]

The government contends that what matters for a "covered offense" is the defendant's actual conduct (i.e., the drug quantity a defendant possessed), not limited to the charge in the indictment or the statute of conviction.[5] This conduct-

_____

[4] The Fifth Circuit has referred to the italicized portion as the "penalties clause." *See Jackson*, 945 F.3d at 320. We adopt this sensible convention.

[5] Under this conduct-based approach, § 404 eligibility turns on whether a defendant possessed more than the Fair Sentencing Act's applicable threshold. For instance, a defendant convicted of possessing five grams or more of crack, but who

8

based interpretation is reasonable if (1) the penalties clause modifies the word "violation" instead of "Federal criminal statute" and (2) "violation" refers to the underlying drug quantity, not the offense of conviction as defined by statute. *See Jackson*, 945 F.3d at 320; *United States v. Wirsing*, 943 F.3d 175, 185–86 (4th Cir. 2019). Conversely, Harris and Jackson argue that the term "covered offense" turns on a defendant's statute of conviction.[6] This approach results if the penalties clause modifies "Federal criminal statute" rather than "violation."

## V

Although § 404(a) is reasonably susceptible to these different interpretations, textual indicia lead us to concur with other courts of appeals that have already resolved this issue: Congress intended eligibility to turn on a defendant's statute of

---

had thirty grams, would be ineligible for relief because the amount possessed exceeds the Fair Sentencing Act's quantity threshold of twenty-eight grams. *See* § 2, 124 Stat. at 2372. Drug quantity is key to the conduct-based approach: it does not matter that the defendant was adjudged guilty beyond a reasonable doubt of possessing only five grams or more.

[6] Based on the statute of conviction approach, the statutory elements of the crime determine § 404 eligibility; a court need not look to the amount of drugs a defendant possessed. As a result, a pre-Fair Sentencing Act defendant convicted of possession with the intent to distribute five grams or more of crack would fall below the Fair Sentencing Act's raised threshold of twenty-eight grams, even if he possessed thirty, fifty, or seventy grams.

conviction rather than his conduct. *See United States v. Smith*, 954 F.3d 446, 448–49 (1st Cir. 2020); *United States v. Johnson*, 961 F.3d 181, 183 (2d Cir. 2020); *United States v. Wirsing*, 943 F.3d 175, 185–86 (4th Cir. 2019); *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019), *cert. denied*, — U.S. —, 2020 WL 1906710 (2020); *United States v. Boulding*, 960 F.3d 774, 775 (6th Cir. 2020); *United States v. Shaw*, 957 F.3d 734, 735 (7th Cir. 2020); *United States v. McDonald*, 944 F.3d 769, 772 (8th Cir. 2019); *United States v. Jones*, — F.3d —, 2020 WL 3248113, at *7 (11th Cir. 2020).

First, "[a] general rule of statutory interpretation is that modifiers attach to the closest noun; courts should not interpret statutes in such a way as to 'divorce a noun from the modifier next to it without some extraordinary reason.'"[7] *Wirsing*, 943 F.3d at 185 (quoting *Lopez v. Gonzales*, 549 U.S. 47, 56 (2006)). "Federal criminal statute" immediately precedes the penalties clause. Thus, it is more natural to attach the penalties clause to "Federal criminal statute" instead of "violation." *See Jackson*, 945 F.3d at 320; *Wirsing*, 943 F.3d at 185.

Second, according to the "anti-surplusage" canon, "[i]t is our duty to give effect, if possible, to every clause and word of a statute. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)).

> [B]ecause sections 2 and 3 of the Fair Sentencing
> Act affected only violations of "Federal criminal

---

[7] This principle of interpretation is sometimes referred to as the "last antecedent rule" or the "nearest reasonable referent rule."

statute[s]," it is hard to see what purpose the phrase "Federal criminal statute" could serve, or why Congress would have placed it where it did, *except* to be the antecedent of the limiting clause. In other words, if ["violation" or] "violation of a Federal criminal statute" were the antecedent of the limiting clause, then the meaning of Section 404(a) would be the same as if it read:

> [T]he term "covered offense" means a violation ~~of a Federal criminal statute~~, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010.

> Reading ["violation" or] "violation of a Federal criminal statute" as the antecedent would thus attribute no meaning to Congress's decision to include the words "of a Federal criminal statute" in the definition of "covered offense."

*Johnson*, 961 F.3d at 189. The adjective "statutory" before the noun "penalties" would also become superfluous. *See Rose*, 379 F. Supp. 3d at 228. The anti-surplusage canon sensibly instructs us to avoid this reading if we can.

Third, the use of the past tense in "were modified" confirms that the penalties clause was intended to modify "Federal criminal statute." *See Jackson*, 945 F.3d at 320. "The

11

Fair Sentencing Act [was not] retroactive when first passed, so it [could not modify] any penalties imposed for violations 'committed before August 3, 2010.' Instead, the only 'statutory penalties' that the Fair Sentencing Act could have modified were the crack-cocaine penalties provided in the Controlled Substances Act itself." *Id.* (internal quotation marks and citations omitted).

Fourth, Congress's intent becomes even more clear when we consider which statutes' penalty provisions "were modified by sections 2 and 3 of the Fair Sentencing Act" and the language and structure of those statutes. The Fair Sentencing Act modified not only the statutory penalties for § 841 but also two other "Federal criminal statute[s]," each of which makes a distinction between the act violating the statute and the statutory penalties for that violation. In the case of § 841, subsection (a), entitled "Unlawful acts," defines a violation of this statute to include "possess[ion] with intent to . . . distribute . . . a controlled substance," while subsection (b)(1), entitled "Penalties," sets out the statutory penalties for "any person who *violates* subsection (a)." 21 U.S.C. § 841(a), (b)(1) (emphasis added). *See also id.* § 960(a) (describing the "Unlawful act[ ]" of "import[ing] or export[ing]" a controlled substance in subsection (a) and the "Penalties" in subsection (b)); *id.* § 844(a) (describing separately the "Unlawful act[ ]" of simple possession of a controlled substance and the "penalties" for "[a]ny person who violates this subsection").

Fifth, even if the legislative intent was for the penalties clause to modify "violation," "a violation of a Federal criminal statute" most likely refers to the offense of conviction as defined by statute. *See Torres v. Lynch*, 136 S. Ct. 1619, 1624

12

(2016) ("The substantive elements primarily define[ ] the behavior that the statute calls a violation of federal law.") (alteration in original) (internal quotation marks and citation omitted).

And sixth, the government's interpretation of § 404(a) is contrary to the clear weight of persuasive authority: no other court of appeals has adopted a quantity-based approach to § 404 eligibility.  *See Smith*, 954 F.3d at 449 (adopting statute of conviction approach); *Johnson*, 961 F.3d at 183 (same); *Wirsing*, 943 F.3d at 185–86 (same); *Jackson*, 945 F.3d at 321 (same); *Boulding*, 960 F.3d at 775 (same); *Shaw*, 957 F.3d at 735 (same); *McDonald*, 944 F.3d at 772 (same); *Jones*, — F.3d —, 2020 WL 3248113, at *7 (same); *see also Wagner v. Pennwest Farm Credit, ACA*, 109 F.3d 909, 912 (3d Cir. 1997) (requiring a compelling basis to effect a circuit split).

## VI

The government offers various counterarguments, none of which we consider persuasive.

## A

One argument is that by interpreting § 404 to focus on a defendant's statute of conviction, certain pre-Fair Sentencing Act defendants will receive a windfall.  A pre-Fair Sentencing Act defendant convicted of possession with the intent to distribute five grams or more of crack, but who possessed thirty grams, for example, could use the statute of conviction approach to fall below the Fair Sentencing Act's elevated threshold of twenty-eight grams.  Such a defendant would be

13

eligible for a discretionary reduction of sentence under § 404. In contrast, a post-Fair Sentencing Act defendant convicted of possession with the intent to distribute twenty-eight grams or more of crack, who possessed thirty grams, would not be eligible for a reduction of sentence. The government believes that this outcome is inconsistent with the purpose of the First Step Act: to treat like offenders[8] similarly by reducing the disparities between those sentenced pre- and post-Fair Sentencing Act.[9]

---

[8] The government wants pre- and post-Fair Sentencing Act defendants who possessed the same drug quantity to be treated alike. But post-Fair Sentencing Act defendants have already benefited from changes to 21 U.S.C. § 841 and the U.S. Sentencing Guidelines. The contexts facing pre- and post-Fair Sentencing Act defendants are simply not analogous.

[9] *See The First Step Act of 2018 (S.3649) – as introduced*, S. Comm. on the Judiciary, 115th Cong. 2 (2018) (describing a bill with the same text as the version of § 404 ultimately enacted that "allows prisoners sentenced before the *Fair Sentencing Act of 2010* reduced the 100-to-1 disparity in sentencing between crack and powder cocaine to petition the court for an individualized review of their case" and "bring[s] sentences imposed prior to 2010 in line with sentences imposed after the Fair Sentencing Act was passed"); 164 CONG. REC. S7021-22 (daily ed. Nov. 15, 2018) (statement of Sen. Durbin) (depicting the same bill as an opportunity "to give a chance to thousands of people who are still serving sentences for nonviolent offenses involving crack cocaine under the old 100-to-1 rul[e] to petition individually" for a reduction of sentence).

14

Yet this concern over a possible windfall ignores the discretionary nature of § 404. While a defendant may be eligible for a reduction of sentence, district courts are under no obligation to provide relief. *See* § 404(b), (c), 132 Stat. at 5222. We are confident that district court judges will exercise their sound discretion in a way that avoids precipitating unfair disparities. Indeed, we expect that a district court, in exercising its discretion, will consider the actual quantity of drugs a defendant possessed.

We are also not persuaded that the statute of conviction approach runs counter to Congress's intent. It seems incongruent with the historical context of the First Step Act for Congress to have intended § 404 to apply only to the select pre-Fair Sentencing Act defendants whose quantities fell between the old and new threshold amounts—from five to twenty-eight grams for § 841(b)(1)(B)(iii) and fifty to 280 grams for § 841(b)(1)(A)(iii). Congress passed "the First Step Act at a time when some, but not all, pre-Fair Sentencing Act inmates had [already] received relief by reference to their offense conduct through application of the post-Fair Sentencing Act" amendments to the U.S. Sentencing Guidelines. *Wirsing*, 943 F.3d at 186; *see also* U.S. SENTENCING GUIDELINES MANUAL, 2011 Supp. to App. C, Amendments 750, 759 (U.S. SENTENCING COMM'N 2011). Since the First Step Act would have a minimal impact on inmates who had previously benefited via the Guidelines, Congress's intent must have been to afford relief "to [other] pre-Fair Sentencing Act offenders, including those who were heretofore ineligible." *Wirsing*, 943 F.3d at 186. This suggests that Congress wanted the First Step Act to have a broad effect. Because a conduct-based interpretation of § 404 would sharply limit eligibility, the

15

statute of conviction approach appears more in line with Congress's purpose.[10]

Moreover, a conduct-based interpretation of § 404 presents its own policy concerns. If § 404 eligibility is based on drug quantity, a court would have to speculate as to how a charge, plea, and sentencing would have looked had the Fair Sentencing Act been in effect. *See United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019). Such an analysis is problematic because it cannot account for the discretionary authority of either a prosecutor or a court. Plea negotiations and colloquies are conducted against the backdrop of the statutory minimum and range. So it is questionable, for example, whether a well-counseled defendant caught with 28.5 grams of crack would have reached a plea deal of twenty-eight grams or more, thereby triggering the higher mandatory minimum by a mere 0.5 grams. The realities of plea bargaining make it likely—indeed probable—that the parties would have stipulated to a lower quantity.

We do not think that Congress meant to adopt a quantity-based approach to § 404 eligibility. Beyond a few specific limitations found within the First Step Act,[11] we see "no indication that Congress intended a complicated and

---

[10] Of course, if Congress intended that § 404 apply only to a select few, it can always enact legislation in furtherance of that end.

[11] *See, e.g.*, § 404(c), 132 Stat. at 5222 ("No court shall entertain a motion made under this section . . . if a previous motion made under this section to reduce the sentence was . . . denied after a complete review.").

eligibility-limiting determination at the 'covered offense' stage of the analysis." *Wirsing*, 943 F.3d at 186 (citing § 404(a), 132 Stat. at 5222). This purposivist argument simply cannot support the weight the government attempts to give it.

**B**

Other counterarguments are also unpersuasive. For instance, the government asserts that the penalties clause modifies "violation" because the Fair Sentencing Act did not alter any statutory penalties: it only amended the quantity thresholds.[12] Yet Congress explicitly defined those threshold changes as alterations to the statutory penalties: "the *statutory penalties* for which *were modified by* section 2 or 3 of the *Fair Sentencing Act of 2010* . . . ." § 404(a), 132 Stat. at 5222 (emphasis added); *see also Shaw*, 957 F.3d at 739 (section two "did not modify the penalties on an individual basis. Instead, it broadly modified penalties for entire categories of offenses that include fixed aggravating elements, such as the weight of the drug."). By enacting the Fair Sentencing Act, Congress altered the statutory penalties in § 841(b)(1). Consequently,

---

[12] The government denies that the change in quantity, from "five grams or more" to "twenty-eight grams or more," reflects any change in the statutory penalties applicable to Harris and Jackson. After all, the statute's mandatory minimum and maximum penalties remained the same: five years and forty years. The increased threshold quantity—from five to twenty-eight grams—merely reflects the point at which the minimum and maximum penalties apply.

17

we accord little weight to the fact that the changes solely impacted the quantity thresholds.

We also discount the government's redundancy argument.[13]  Two courts of appeals have already concluded that the recurrence of "statute" and "statutory" is not superfluous.  The Fourth Circuit determined that "[t]he First Step Act specifies that it is 'statutory penalties' that are at issue to avoid any ambiguity that might arise in the sentencing context between penalties specified by statute or by the Guidelines."  *Wirsing*, 943 F.3d at 186.  The Fifth Circuit agreed, concluding that the reiteration made it "doubly clear that Congress intended to refer only to the *statute* under which the defendant was convicted."  *Jackson*, 945 F.3d at 320.  We find those courts' line of reasoning—distinguishing between statutory and Guidelines penalties—persuasive.

Lastly, the government maintains that a conduct-based interpretation of § 404 is more fitting because of Congress's use of the term "violation" rather than "conviction." "Violation" can refer to conduct, particularly where there are civil consequences for unlawful actions.  *See, e.g.*, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488–90 (1985) (mentioning civil penalties for RICO violations absent a criminal conviction).  The First Step Act, however, applies only to those who have been convicted.  Within this context,

---

[13] The government avers that this redundancy disappears only if the whole phrase—"a violation of a Federal criminal statute"—is modified.  But this position does not help the government.  *See supra* Part V.

the "violation" versus "conviction" distinction loses most of its significance.

To summarize, § 404 eligibility turns on a defendant's statute of conviction, not on his possession of a certain quantity of drugs. The last antecedent rule and other textual indicia of congressional intent support this conclusion, and the government's various counterarguments are unavailing.

## VII

Although Harris and Jackson each possessed more than twenty-eight grams of crack, Harris pleaded guilty to and Jackson was convicted of possession of five grams or more under § 841(a)(1), (b)(1)(B)(iii). We determine if a defendant is § 404 eligible by looking to his statute of conviction. Here, five grams or more is less than the current threshold of twenty-eight grams. *See* § 2, 124 Stat. 2372 (modifying the statutory penalties in § 841(b)(1)(B)(iii)). Thus, Harris and Jackson can seek discretionary reductions of their sentences.

Unlike the ruling in *Jackson*, the District Court in *Harris* assumed § 404 eligibility. But the Court declined to exercise its discretion to reduce Harris's sentence. The Judge stated,

> this Court declines to exercise its discretion . . . [because] *neither the statutory penalties nor the advisory guidelines range would be affected if Defendant were sentenced today given the stipulated drug quantity* and the additional information provided by the defense regarding

19

his post-sentencing activities is not sufficient to persuade the Court that a sentence reduction is appropriate.

Harris App. 1–2 (emphasis added).  Harris was sentenced as a career offender, and as a result, the stipulated drug quantity does not establish the advisory guidelines range; rather, it is the post-Fair Sentencing Act statutory maximum that fixes the offense level that would be ascribed to Harris today.  *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(b) (U.S. SENTENCING COMM'N 2018).  The Court's reasoning was deficient in this respect, possibly tainting its exercise of discretion.  Out of an abundance of caution, we will ask the District Court to consider the reduction of sentence issue anew.

## VIII

Section 404(a) eligibility turns on a defendant's statute of conviction rather than his actual conduct, meaning both Harris and Jackson are eligible for a reduction of sentence. Since the District Court in *Jackson* erroneously denied eligibility, we will reverse and remand for further proceedings. The District Court in *Harris* assumed § 404 eligibility, but because its decision to deny relief may have relied on faulty reasoning, we will vacate and remand for that Court to exercise its discretion in light of this opinion.

20

HARDIMAN, *Circuit Judge*, dissenting.

The Majority concludes that Kevin Harris and Anthony Jackson are eligible for relief under § 404 of the First Step Act because they committed "covered offenses" under the statute. My disagreement with that premise requires this respectful dissent.

I

This appeal presents a difficult question of statutory interpretation: Does the penalties clause modify "Federal criminal statute" as Appellants Harris and Jackson argue, or does it modify "violation" as the Government suggests? As my colleagues rightly note, § 404(a) is susceptible to different interpretations. The weight of authority strongly favors the Majority since the Courts of Appeals for the First, Second, Fourth, Fifth, Sixth, Seventh, and Eighth Circuits have all adopted its position. *See, e.g.*, *United States v. Smith*, 954 F.3d 446, 448–49 (1st Cir. 2020); *United States v. Johnson*, 961 F.3d 181, 183 (2d Cir. 2020); *United States v. Wirsing*, 943 F.3d 175, 185–86 (4th Cir. 2019); *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019), *cert. denied*, — U.S. —, 2020 WL 1906710 (2020); *United States v. Boulding*, 960 F.3d 774, 781 (6th Cir. 2020); *United States v. Shaw*, 957 F.3d 734, 735 (7th Cir. 2020); *United States v. McDonald*, 944 F.3d 769,

1

772 (8th Cir. 2019).[1] Yet several district courts have held that the Government has the better of the argument. *See, e.g.*, *United States v. Blocker*, 378 F. Supp. 3d 1125 (N.D. Fla. 2019); *United States v. Willis*, 417 F. Supp. 3d 569 (E.D. Pa. 2019). In my view, the district court opinions are more persuasive than those of our sister circuits.

## II

The Fair Sentencing Act of 2010 increased the drug weights of crack cocaine required to trigger certain mandatory statutory penalties. In particular, "[t]he Act increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum (while leaving powder at 500 grams and 5,000 grams respectively)." *Dorsey v. United States*, 567 U.S. 260, 269 (2012). But Congress did not make this change retroactive, so offenders responsible for 5 to 28 grams or 50 to 280 grams of crack before the Fair Sentencing Act faced harsher penalties

---

[1] I note, however, that the government conceded eligibility in *Wirsing* and the court only briefly explained its decision to adopt the statute of conviction theory. 943 F.3d at 181–82, 185–86. Likewise, the defendant's offense in *McDonald* involved 57 grams of crack, making him eligible for a reduced sentence under either theory. 944 F.3d at 771–72. So the government did not argue that the defendant did not commit a "covered offense." *Id.* at 772. And in *Smith*, the First Circuit acknowledged the holdings in *Wirsing*, *McDonald*, and *Jackson* and "assume[d] that this case law is correct" because the government provided "no hint of an argument . . . that [it] should hold otherwise." 954 F.3d at 448–49.

2

than offenders who possessed the same amount of crack after its enactment.

Congress addressed this disparity by passing the First Step Act of 2018. As the Majority explains, § 404 of the First Step Act gives offenders who committed a "covered offense" the chance to seek a reduced sentence.

Central to the dispute in these appeals is whether district courts must consider an offender's *statute of conviction* or his *actual conduct* when determining whether he committed a "covered offense." The Majority concludes the statute of conviction controls. But the most natural reading of § 404 is that an offender's actual conduct dictates eligibility.

III

A

"A court's primary purpose in statutory interpretation is to discern legislative intent." *Morgan v. Gay*, 466 F.3d 276, 277 (3d Cir. 2006) (citation omitted); *see United States v. Knox*, 32 F.3d 733, 744 (3d Cir. 1994). We "presume that Congress expressed its legislative intent through the ordinary meaning of the words it chose to use." *Knox*, 32 F.3d at 744 (citations omitted). "Thus, it is axiomatic that when the statutory language is clear, the words must be interpreted in accordance with their ordinary meaning." *Id.*; *see United States v. Geiser*, 527 F.3d 288, 294–95 (3d Cir. 2008) (using legal and general dictionaries to discern the ordinary meaning of words).

The text of the First Step Act suggests an offender's actual drug quantity determines eligibility.

First, a "violation" is defined as "the *act* of violating," Merriam-Webster's Collegiate Dictionary (11th ed. 2005), or "[t]he *act* of breaking or dishonoring the law," Black's Law Dictionary (11th ed. 2019) (emphasis added). And "act" in this context refers to the conduct underlying an offender's arrest and conviction, not the words of the indictment or statute. Congress could have defined "covered offense" to refer to the statute of conviction. Instead, Congress defined "covered offense" as a "violation," which is an "act." *See Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 489 (1985) ("violation" does not imply a criminal conviction and "refers only to a failure to adhere to legal requirements"). By defining "covered offense" as a "violation," Congress intended courts to consider whether the Fair Sentencing Act changed the penalties for the offender's actual conduct—here, Harris and Jackson's possession with the intent to distribute more than 28 grams of crack.

Second, the Majority says Congress's use of "violation" reveals little because the First Step Act applies only to those previously convicted. Maj. Op. 19. But Congress's use of "as if" and "committed" in § 404(b) also suggests courts must look to an offender's actual conduct to determine eligibility. To "commit" is "to carry into action deliberately," Merriam-Webster's Collegiate Dictionary (11th ed. 2005), or "[t]o perpetrate (a crime)," Black's Law Dictionary (11th ed. 2019). And "perpetrate" means "to bring about or carry out," Merriam-Webster's Collegiate Dictionary (11th ed. 2005), or "[t]o commit or carry out (an act, esp. a crime)." Black's Law Dictionary (11th ed. 2019). Harris and Jackson "committed" their crimes when they possessed with the intent to distribute

4

more than 28 grams of crack. So if a district court is to consider imposing a reduced sentence *as if* the Fair Sentencing Act was in effect at that time, it must consider the offender's conduct to determine which subsection of 21 U.S.C. § 841 the Government would have charged.

Take Harris's case as an example. A court considering a reduced sentence as if the Fair Sentencing Act was in effect when he committed his offense must engage in a simple three-step analysis. First, it would consider the amount of crack cocaine attributable to him—33.6 grams. Second, it would determine the relevant threshold amount—28 grams or more. And third, it would consider the statutory penalty associated with that threshold amount—5 to 40 years' imprisonment. That statutory penalty range is the same as for Harris's 2007 conviction. So he is not eligible for a reduction under § 404. To consider only the charged conduct in Harris's case—"five grams or more"—would conflict with the plain meaning of the statutory text and ignore the reality of Harris's offense.

The Majority contends that considering actual conduct requires the "problematic" speculation of how the Government would have prosecuted a violation post-Fair Sentencing Act. Maj. Op. 16. That may be true in some cases, and any lack of uncertainty in that regard should entitle the petitioner to a fresh review by the trial judge. But in many other cases—like the two before us here—the district courts won't have much speculating to do. Here, Harris *admitted* to possessing 33.6 grams and the uncontroverted record showed that Jackson possessed 48 grams. Because Harris and Jackson both possessed more than 28 grams but less than 280 grams, they were chargeable with "28 grams or more."

5

The Supreme Court's decision in *Dorsey v. United States*, 567 U.S. 260 (2012) also suggests we should consider an offender's actual conduct. There, the Court held that the Fair Sentencing Act's "new, more lenient mandatory minimum provisions do apply to [] pre-Act offenders" convicted, but not yet sentenced, when the Act took effect. *Id.* at 264. In so concluding, the Court considered the offender's actual conduct, saying:

> With this background in mind, we turn to the relevant facts of the cases before us. Corey Hill, one of the petitioners, *unlawfully sold 53 grams of crack* in March 2007, before the Fair Sentencing Act became law. . . . Under the 1986 Drug Act, an offender who sold 53 grams of crack was subject to a 10-year mandatory minimum. 21 U.S.C. § 841(b)(1)(A)(iii) (2006 ed.). Hill was not sentenced, however, until December 2010, after the Fair Sentencing Act became law and after the new Guidelines amendments had become effective. . . . *Under the Fair Sentencing Act, an offender who sold 53 grams of crack was subject to a 5-year, not a 10-year, minimum.* § 841(b)(1)(B)(iii) (2006 ed., Supp. IV).

*Id.* at 270 (emphasis added). Significantly, the Court did not say "an offender convicted of selling *fifty grams or more* was subject to a 5-year, not a 10-year, minimum." Rather, the Court used the offender's actual conduct when discussing whether the penalty for that conduct had changed. We should do the same here.

6

Finally, the meaning of "statutory penalty" and the evolution of the Fair Sentencing Act also support interpreting "covered offense" to refer to an offender's actual conduct. A "statutory penalty" is (unsurprisingly) "[a] penalty imposed for a statutory violation." Black's Law Dictionary (11th ed. 2019). The Majority characterizes the Fair Sentencing Act's quantity threshold amendments as amendments to statutory penalties. Maj. Op. 17–18. I cannot square that characterization with the statutory text or a commonsense definition of "statutory penalty."

Congress did not amend the penalties for crack cocaine offenses in the Fair Sentencing Act; it retained the previous mandatory penalty ranges while amending the threshold drug amounts that trigger those penalties. It follows that "the statutory penalties *for which* were modified by section 2 or 3 of the Fair Sentencing Act of 2010" must modify "violation" or "violation of a Federal criminal statute" because the Fair Sentencing Act modified the quantities that trigger certain penalties, not the penalties themselves. In other words, the Fair Sentencing Act changed the penalties for certain "violations," or acts. It did not change the penalties for the "Federal criminal statute"—they remained the same.

Taken together, these textual cues support an interpretation based on an offender's actual conduct rather than the statute of conviction.

B

The Majority offers three principal reasons in support of its interpretation, but I find each one wanting.

First, the Majority relies on the "last antecedent rule" to support its interpretation that "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010" modifies only "Federal criminal statute." Maj. Op. 10. That rule instructs that modifiers usually attach to the closest noun. *See Lopez v. Gonzales*, 549 U.S. 47, 56 (2006). Generally, courts should not interpret statutes to "divorce a noun from the modifier next to it without some extraordinary reason." *Id.*

I have no quarrel with this rule in general, but I disagree with its application here. The Majority concludes that "Federal criminal statute" is the closest noun to the modifier. But it's more reasonable to read the modifier as applying to "violation of a Federal criminal statute" because "that clause hangs together as a unified whole, referring to a single thing." *Cyan, Inc. v. Beaver Cty. Emp. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018). That's why the Supreme Court declined to apply the last antecedent rule in *Cyan* "when the modifier directly follows a concise and 'integrated' clause." *Id.* (citation omitted).

Here, "violation of a Federal criminal statute" is a "concise and integrated clause." In this statutory scheme, it would be anomalous to separate "violation" from "Federal criminal statute" in § 404(a) because penalties attach to violations and the Fair Sentencing Act modified conduct thresholds, not the actual penalties.

8

Second, my colleagues emphasize Congress's use of the past tense ("were modified") in the penalties clause. Maj. Op. 12. They conclude that the penalties clause cannot apply to violations because the non-retroactive Fair Sentencing Act could not have "modified" the penalty imposed for a "violation" "committed before August 3, 2010." *Id.* Although this reading of the statute is plausible, the better reading suggests that "were modified" refers to the statutory penalties associated with specific *violations* that the Fair Sentencing Act modified ten years ago.

Finally, the Majority reasons that considering actual drug quantities renders § 404's reference to "statute" and "statutory penalties" superfluous. Maj. Op. 11–12. But Congress's use of "statute" and "statutory penalties" makes perfect sense if we read "violation of a Federal criminal statute" as an integrated whole. Congress did not modify any penalties, just the drug weights triggering them. So as long as we interpret "statutory penalties *for which*" as referring to a "*violation* of a Federal criminal statute," there is no superfluity.

For these reasons, I disagree with the Majority's conclusion that canons of interpretation suggest that § 404 eligibility turns on an offender's statute of conviction instead of his actual conduct.

C

When interpreting a statute we also consider "the design of the statute as a whole and its object and policy," *United States v. Schneider,* 14 F.3d 876, 879 (3d Cir. 1994), "and avoid constructions that produce 'odd' or 'absurd results' or that are 'inconsistent with common sense.' *See Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 454 (1989) (internal

quotations omitted).” *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008).

The Majority's interpretation of § 404 not only undermines the goals of the Fair Sentencing Act and the First Step Act, it also opens the door to absurd results. Congress enacted the Fair Sentencing Act to “restore fairness to Federal cocaine sentencing” by reducing sentencing disparities between crack and powder cocaine offenders. *See* 124 Stat. at 2372. And in passing the First Step Act, Congress meant to extend the Fair Sentencing Act to crack offenders sentenced before the Fair Sentencing Act. *See* S. Comm. on the Judiciary, 115th Cong., *The First Step Act of 2018 (S.3649)*, at 2 (Nov. 15, 2018), https://www.judiciary.senate.gov/imo/media /doc/S.%203649%20First%20Step%20Act%20Summary%20 -%20As%20Introduced.pdf (remarking § 404 would “bring sentences imposed prior to 2010 in line with sentences imposed after the Fair Sentencing Act was passed”). The interpretation adopted by the Majority does the opposite.

Instead of avoiding sentence disparities and bringing pre-Fair Sentencing Act crack sentences in line with sentences imposed thereafter, the Majority's interpretation will invite greater disparities and give some offenders a windfall. Take these cases. Today's decision makes Harris eligible for a reduced sentence even though he admitted to possessing 33.6 grams of crack cocaine, simply because he was convicted and sentenced before August 3, 2010. Jackson gets the same opportunity even though police found him asleep at the wheel in possession of 48 grams of crack. But a defendant convicted and sentenced in 2011 for possessing 29 grams of crack—less weight than both Harris and Jackson—would not be eligible for a reduced sentence. Congress could not have intended such disparate treatment.

10

As that example reveals, the Majority's interpretation will not "bring sentences imposed prior to 2010 in line with sentences imposed after the Fair Sentencing Act was passed." Instead, it empowers sentencing judges to treat those convicted before 2010 more favorably than those convicted thereafter. The Majority emphasizes that relief under § 404 is discretionary. Maj. Op. 15. True enough, but the fact remains that district judges around the country—some, not all—will reduce sentences for pre-August 3, 2010 offenders, while offenders who committed the same or lesser offenses afterwards will have no such opportunity. In doing so, those courts will accomplish the opposite of what Congress intended in the First Step Act.

The Supreme Court's *Dorsey* opinion is instructive once again. In holding that the Fair Sentencing Act's new threshold amounts applied to offenders not yet sentenced on August 3, 2010, the Court explained that

> applying the 1986 Drug Act's old mandatory minimums to the post-August 3 sentencing of pre-August 3 offenders would create disparities of a kind that Congress enacted the Sentencing Reform Act and the Fair Sentencing Act to prevent. Two individuals with the same number of prior offenses *who each engaged in the same criminal conduct involving the same amount of crack* and were sentenced at the same time would receive radically different sentences.

567 U.S. at 276–77 (emphasis added). The problem identified by the Court in *Dorsey* applies here too.

The "actual conduct" approach serves the purpose of aligning pre-2010 sentences with post-2010 sentences without sweeping more broadly than Congress intended. Although that approach means Harris and Jackson are ineligible for a reduction because their sentences match post-2010 sentences for the same drug quantities, thousands of other offenders would be entitled to relief.[2] For example, all offenders who

---

[2] Before the First Step Act's enactment, the United States Sentencing Commission estimated that the Act would make 2,660 prisoners eligible for a sentence reduction. *See* U.S. Sentencing Comm'n, *Sentence and Prison Impact Estimate Summary S. 756, The First Step Act of 2018* (Dec. 18, 2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/prison-and-sentencing-impact-assessments/December_2018_Impact_Analysis.pdf; *see also* U.S. Sentencing Comm'n, *Sentence and Prison Impact Estimate Summary S. 1917, The Sentencing Reform and Corrections Act of 2017* (Aug. 3, 2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/prison-and-sentencing-impact-assessments/August_2018_Impact_Analysis_for_CBO.pdf (providing the same estimate under a different bill with identical language).

But under the "statute of conviction" theory, this number will skyrocket. Every crack defendant sentenced before the Fair Sentencing Act took effect will be eligible for a reduction, at least in districts where indictments routinely track the statute. The number of eligible defendants would dwarf the Sentencing Commission's estimate. *See* U.S. Dep't of Justice, *Drug Offenders in Federal Prison: Estimates of Characteristics Based on Linked Data* (October 2015),

possessed 6 to 27 grams of crack in 2000 and were subject to a 5-year mandatory minimum are now eligible for a sentence reduction because those weights do not trigger a mandatory minimum under the Fair Sentencing Act.

In sum, § 404 is far from clear. But when one considers the statute's text, context, and its history, the balance tips in favor of evaluating actual conduct to determine eligibility for a sentence reduction. Indeed, this is the only approach that accomplishes Congress's twin goals of offering a chance at a reduced sentence for certain crack offenders who violated the drug laws in ways ameliorated by the Fair Sentencing Act and reducing sentencing disparities. Because the violations committed by Harris and Jackson are not "covered offenses" under the statute, I respectfully dissent.

---

https://www.bjs.gov/content/pub/pdf/dofp12.pdf (noting there were 26,409 total crack cocaine offenders in federal prison in 2012).