**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1033
_____

GET KAISERED, INC., A New York Corporation; KAISER FITNESS LLC, A New
York Limited Liability Company; ANNA KAISER, An Individual

v.

AKT FRANCHISE, LLC., A Delaware Limited Liability Company; XPONENTIAL
FITNESS, LLC., A Delaware Limited Liability Company

AKT Franchise, LLC.,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-20-cv-01037)
District Judge: Hon. Colm F. Connolly

_____

Argued June 22, 2021

Before: SMITH, *Chief Judge*, MATEY, and FISHER, *Circuit Judges*.

(Opinion filed: August 10, 2021)

Witt W. Chang
Jeffrey K. Logan
Alex M. Weingarten
Venable
2049 Century Park East
Suite 2300
Los Angeles, CA 90067

Bryan A. Garner      [ARGUED]
14180 Dallas Parkway
Suite 280
Dallas, TX 75254
        *Counsel for Appellant*


Kerry A. Brennan     [ARGUED]
Brennan Law PLLC
902 Broadway, 6th Floor
New York, NY 10010
        *Counsel for Appellees*

---

OPINION[*]

---

MATEY, *Circuit Judge*.

Xponential Fitness and AKT[1] Franchise bought the right to franchise Anna Kaiser's cardio fitness business and the intellectual property they hoped would make the new franchises thrive. But the relationship quickly soured, and lawsuits largely grounded on contract claims followed. Both sides sought preliminary injunctions, remedies largely denied by the District Court. Agreeing that Appellant AKT Franchise has failed to show a likelihood of success on its claims, we will affirm.

## I. BACKGROUND

Over two decades, Anna Kaiser developed a custom fitness program. By 2018, she operated four "AKT in Motion" studios in the New York area. With hopes of expansion,

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] AKT is short for "Anna Kaiser Technique," Kaiser's unique fitness program.

2

Kaiser[2] agreed to sell the franchise rights to her studios and much of the intellectual property related to her business to Xponential Fitness and a new company, AKT Franchise LLC. The parties spelled out the deal in an Asset Purchase Agreement ("APA") that, among other terms, granted Kaiser a non-transferable, non-exclusive license to use the intellectual property, and her persona, in her existing AKT in Motion studios. But that license came with a condition: those studios must become franchises, and the APA contained a restrictive covenant prohibiting the selling parties from operating competing businesses for five years after closing. That license forms the heart of this dispute.

Trouble began, as commercial troubles often do, when the buyers failed to make two post-closing cash payments. Kaiser and the sellers tried to scuttle the deal, suing for breach of contract and changing the names of the existing studios to "Anna Kaiser Studios." The buyers fought back with counterclaims of breach. Both parties sought preliminary injunctions with AKT Franchise and Xponential seeking to enjoin Kaiser from operating her original studios because, they alleged, her operation of the studios outside the AKT franchise violated the APA's restrictive covenant. The District Court denied both motions, finding neither side showed a likelihood of success on their claims. AKT Franchise timely appealed.[3]

---

[2] Along with her companies AKT in Motion and Get Kaisered, Inc., the Appellees.

[3] AKT Franchise's co-defendant/co-counterclaimant Xponential is not a party to this appeal. The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction to review an order refusing injunctive relief under 28 U.S.C. § 1292(a)(1). We review the denial of a preliminary injunction for an abuse of discretion, but any underlying legal questions are subject to plenary review. *ADP, LLC v. Rafferty*, 923 F.3d 113, 119 (3d Cir. 2019). Under Delaware law, the "proper construction" of a contract is a question of

## II. DISCUSSION

As the party seeking a preliminary injunction, AKT Franchise must "demonstrate a reasonable likelihood of success [on its breach of contract claims] and that it would likely suffer irreparable harm absent an injunction." *ADP, LLC v. Rafferty*, 923 F.3d 113, 119–20 (3d Cir. 2019). Here, success depends on two questions: 1) whether the APA required Appellees to operate Kaiser's studios as AKT franchises, and 2) whether the Anna Kaiser Studios are "competing businesses" under the APA. Because we agree with the District Court's conclusion that Appellant failed to establish a likelihood of success on either question, we will affirm.

### A. The Franchise Requirement

Section 5.11(a) of the APA provides that the Purchaser (Appellant) must grant the Seller (Appellees) a "non-exclusive, non-transferable" license back of the transferred AKT intellectual property "to be used for the exclusive purpose of the [Seller] maintaining and operating its current 'AKT in Motion' studios . . . ('the Seller Studios')."[4] The provision adds that the license is granted "provided that the Seller shall cause the AKT Group to operate all of the Seller Studios as franchises of the Purchaser in the Ordinary Course of Business. Following the Closing, Purchaser and Seller . . . shall use commercially

---

law. *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1266–67 (Del. 2017).

[4] Section 5.11(a) refers to the "current 'AKT in Motion' studios" as "Current Studios," and provides for the creation of at least two new "Additional Studios," with the Current Studios and Additional Studios collectively labeled "Seller Studios." (App. at 1345.) No Additional Studios were ever opened, so the Current Studios alone are the Seller Studios. For simplicity, we will call them Seller Studios.

reasonable efforts to enter written Franchise Agreements for the Seller Studios[.]" (App. at 1345.) But if "such Franchise Agreements are not executed by the third (3rd) anniversary of the date hereof," the license terminates. (App. at 1345.)

Appellant argues the provision in Section 5.11(a) requiring that Kaiser's studios operate as AKT franchises did not just condition the IP license, but created an affirmative promise to operate the studios as franchises or not at all. Like the District Court, we disagree. The proviso is best read as creating a condition precedent, "an event, not certain to occur, which must occur . . . before performance under a contract becomes due." *Pac. Emp'rs. Ins. Co. v. Glob. Reins. Corp. of Am.*, 693 F.3d 417, 430 n.6 (3d Cir. 2012) (quoting Restatement (Second) of Contracts § 224 (1981)). Appellant's obligation to perform—to grant Kaiser the IP license—was dependent upon her execution of franchise agreements. If no such agreements were executed by the third anniversary of the closing, the result was clear: the license would simply terminate. The APA did not provide that Kaiser had to then cease operating her studios altogether.

Appellant also believes Section 5.11(a) to immediately, upon closing, require the Appellees to operate the Seller Studios as AKT franchises. Not so, say Appellees; they just had to use commercially reasonable efforts to enter written Franchise Agreements within three years of closing. And like the District Court, we agree the Appellees have the better interpretation. While Section 5.11(a) does grant Appellees a license to use AKT Franchise's newly acquired intellectual property to operate the Seller Studios as franchises, the clause includes a three-year period to fulfill that obligation.

That conclusion is confirmed by the whole text of the APA. Section 2.4 of the Consulting Agreement, Exhibit B to the APA,[5] says, "Nothing in this Section 2.4 shall prohibit [Kaiser] from . . . owning or operating any 'AKT in Motion' *studio or franchise*." (App. at 1373 (emphasis added).) Under Appellant's argument, the Seller Studios—which were the only existing AKT in Motion studios at closing—would automatically become franchises when the deal closed. But if that is correct, there would be no AKT in Motion studios that were *not* franchises after the contract was signed, making "studio or" superfluous. Such a reading would violate "our duty to give effect, if possible, to every clause and word" in a written text. *United States v. Jackson*, 964 F.3d 197, 203 (3d Cir. 2020) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Here, post-closing, the Consulting Agreement contemplated that Kaiser could operate an AKT in Motion franchise or a non-franchise AKT in Motion studio. That conflicts with Appellant's reading of Section 5.11(a), but squares with the meaning "determined from the four corners of the contract." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 706 F.3d 217, 223 (3d Cir. 2013) (quotations and citation omitted).

Because the best reading of the APA suggests that the IP license did not condition Appellees' freedom to operate and that Appellees were not required to immediately operate the Seller Studios as AKT franchises, Appellant has not shown a likelihood of success. The District Court correctly denied the motion for a preliminary injunction.

---

[5] Under the APA, "the Exhibits attached hereto form part of this Agreement." (App. at 1353.)

## B.     The Noncompete Clause

Appellant's argument about the alleged breach of the APA's restrictive covenant similarly falls short.[6] Section 5.4 of the APA prohibits Appellees from engaging in an extensive list of activities related to any "Competing Business" in North America, with "Competing Business" defined as "the operation or franchising of fitness studios other than Seller Studios." (App. at 1342.) Despite the Seller Studios' exemption from the definition of Competing Business, Appellant argues that Anna Kaiser Studios do not qualify because they are not AKT franchises.

But the Seller Studios are, per the definition of Current Studios, the Sellers' "current 'AKT in Motion' studios set forth in Schedule 5.11(a)." (App. at 1345.) Schedule 5.11(a) contains only a list of general locations and street addresses for four studios. And we have held that a contract written in the present tense is "speaking on" the date of closing, *Castle v. Cohen*, 840 F.2d 173, 177 (3d Cir. 1988), so the definition of Seller Studios refers to the AKT in Motion studios, listed in Schedule 5.11(a). When interpreting an unambiguous contract governed by Delaware law, we ask "what a reasonable person in the position of the parties would have thought the language of [the] contract means." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). And a reasonable person would infer the word "current" matters to the definition of Seller Studios. Because the relevant time is the moment of closing, it does not matter that Appellees later rebranded the studios.

---

[6] Appellant expressly disclaims any argument that the APA is ambiguous, thus confining our review to whether the APA unambiguously supports Appellant's reading.

7

They are still the same studios[7] listed in Schedule 5.11(a), so they are exempt from the APA's restrictive covenant, and there is no likelihood of success on this claim.

## III. CONCLUSION

For these reasons, we will affirm the District Court's denial of Appellant's motion for a preliminary injunction.

---

[7] Except for one studio that closed in 2020.